Argued November 30, 1965, affirmed January 26, 1966

# STATE OF OREGON *v.* PENNEY

410 P. 2d 226

*Gary D. Babcock,* Deputy Public Defender, Salem, argued the cause for appellant. With him on the briefs was Lawrence A. Aschenbrenner, Public Defender, Salem.

*George M. Joseph,* Deputy District Attorney, Portland, argued the cause for respondent. On the brief were George Van Hoomissen, District Attorney, and Lewis B. Hampton, Deputy District Attorney, Portland.

Before McALLISTER, Chief Justice, and PERRY, SLOAN, GOODWIN, DENECKE, HOLMAN and LUSK, Justices.

PERRY, J.

The defendant was convicted of the crime of illegal possession of narcotics and appeals.

The facts in this case are as follows:

The defendant resided in a house divided into four separate apartments. Police had maintained a surveillance of this house since the last part of July or the first of August, 1964, until defendant's arrest on September 11, 1964. They had observed quite a number of known narcotic users frequently going into and coming out of the house. Early in September the police learned from an informant at Rocky Butte city

jail that the defendant had in his possession narcotics which the police surmised were obtained through a burglary committed in Salem.

On the date of the arrest, a police officer called a police captain by police radio and informed that officer that the defendant would be leaving his apartment to make a delivery of narcotics. This information was then relayed by the captain to the police officers maintaining the surveillance of the premises. The police officers watching the premises soon after receiving the information observed the defendant come out of the house with a brown paper sack in his hand, glance up and down the street, and then put the sack inside his shirt and button it. He then stepped into an automobile and drove away. The police followed the defendant a few blocks, stopped his automobile, placed him under arrest, searched, and narcotics were found in the sack on his person.

Subsequent to arrest and prior to trial, defendant filed a motion to suppress the evidence obtained by the officers at the time of his arrest, the basis of the motion being that he was arrested without a warrant having issued and there existed insufficient probable cause to make the arrest and search. At this hearing the defendant asked the name of the informer, and an objection by the state to the disclosure of the informant's name was sustained by the trial court.

Although the police testified that the informer was reliable, the refusal to give the name of the informant is assigned as error by the defendant on the basis that unless defendant knew who the informer was he was not in a position to rebut probable cause to search without a warrant and thus test whether or not the evidence was seized in violation of his Fourth Amendment rights under the Constitution of the United

States, and this action of refusal violated his Fourteenth Amendment rights.

The defendant relies upon *Roviaro v. United States,* 353 US 53, 77 S Ct 623, 1 L ed2d 639, wherein the Supreme Court held that due to the nature of the crime charged [sale and transportation of narcotics], and the fact that the informer was present when the crime was committed, the privilege of withholding the name of an informer, which is granted to encourage the "obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials," 353 US 53, 59, must give way "[w]here the disclosure of an informer's identity, * * * is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, * * *", 353 US 53, 60.

The criminal act charged here by the state was solely unlawful possession, and there is no evidence from which an inference could be drawn that the informer could have had any participation in the crime, or was present when the arrest was made, or observant of any of the proceedings by the police prior to the arrest. Therefore, the withholding of the informant's name for the purpose of guaranteeing the defendant a fair trial by bringing in evidence contra to that of the officers is not here present.

██ Also, while not dealing with the question of the right to knowledge of the informer for the purpose of testing the informer's reliability, it is established that reliable hearsay evidence is sufficient to constitute "probable cause" or "reasonable grounds" for the issuance of a valid search warrant, *State v. Tacker,* 241 Or 597, 407 P2d 851, or an officer's belief that a crime is being committed in his presence and justify

arrest without a warrant. *Draper v. United States,* 358 US 307, 79 S Ct 329, 3 L ed2d 327.

Since the evidence of the informer could not in anywise be a benefit to the defendant, the sole question here presented is whether a defendant is entitled to disclosure of an informant's identity where the issue to be determined on a motion to suppress is "probable cause" or "reasonable grounds" for a legal arrest and search without a warrant.

■ It is well established that the arrest and search without a warrant is legal where "probable cause" or "reasonable grounds" is established by evidence apart from the informer's communication, and in such instances the privilege of non-disclosure applies. *Roviaro v. United States,* supra; *Scher v. United States,* 305 US 251, 59 S Ct 174, 83 L ed 151; *Priestly v. Superior Court,* 50 Cal2d 812, 330 P2d 39; *Brewster v. Commonwealth, Ky,* 278 SW2d 63.

In *Priestly v. Superior Court,* supra, a divided court held that where the arrest and search was made without first obtaining a warrant, solely upon the communication from an informer, and without more a disclosure is required as "[o]nly by requiring disclosure and giving the defendant an opportunity to present contrary or impeaching evidence as to the truth of the officer's testimony and reasonableness of his reliance on the informer can the court make a fair determination of the issue." 50 Cal2d 812, 818, 330 P2d 39, 43. "If an officer were allowed to establish unimpeachably the lawfulness of a search merely by testifying that he received justifying information from a reliable person whose identity cannot be revealed, he would become the sole judge of what is probable cause to make the search. Such a holding would de-

stroy the exclusionary rule" 50 Cal2d 812, 818, 330 P2d 39, 43.

■ The *Priestly* case has no application to the facts of the case before us. While the officers testified they made the arrest at the time that they did because of a tip from an informer, the arrest was not made until by their own observance they determined that in all probability the informer's information was reliable. As previously pointed out, they observed the defendant as he left the house, as he looked up and down the street, and then secreted the paper sack in his shirt [an unusual place to carry a paper sack] before entering the automobile. While it may be maintained that the officers could not possibly know that the paper sack contained narcotics, it can hardly be contended that the officers did not have "probable cause" or "reasonable grounds" to believe that this sack did contain narcotics when defendant's home had been under surveillance for a month and a half because of narcotic traffic and they had observed known addicts frequenting the place.

■ Whether or not there exists "probable cause" or "reasonable grounds" to believe that a crime is being committed in the presence of an officer is, as the name implies, the probabilities as they would appear to reasonably cautious, prudent men, not legal technicians. *Brinegar v. United States,* 338 US 160, 175, 69 S Ct 1302, 93 L ed 1879.

The defendant also relies upon *United States v. Fay,* 234 F Supp 543, a decision of the United States District Court, S.D. New York. In this case one Joseph Coffey was convicted in the state of New York of the burglary of a jewelry store. He and a companion were arrested and searched without a warrant and diamonds were found which were identified as those

taken in the burglary. He subsequently sought a writ of habeas corpus in the federal court on the basis that the evidence, consisting of the diamonds, was obtained in violation of his constitutional right against unlawful search and seizure under the Fourth Amendment, and he was denied due process of law under the Fourteenth Amendment when the trial court refused to disclose the identity of an informer whose communication led to the arrest and search. The facts upon which the case was decided were as follows:

An FBI agent was informed of the identity of the persons committing the robbery, and that they were trying to dispose of the diamonds. The agent had the informant identify the parties from photographs in his files. The agent, also from a description of the jewels given him by the informer, compared this with the listed description of the stolen jewels and found that they corresponded. The FBI agent then requested the informer to try to find out where the diamonds were. The informer then entered a telephone booth with the FBI agent and, after contacting one of the parties later arrested and searched, held the receiver so that the agent could hear the conversation. The agent testified in substance that he heard the party on the other end of the telephone conversation state that the diamonds had not yet been disposed of and that a further attempt would be made that evening at 7:00 p.m. when the speaker would meet other parties at the Paramount Theater in Brooklyn. Shortly after 6:15 that evening the FBI agent with other FBI agents and New York police officers drove to the Paramount theater. The FBI agent there saw the defendant with others enter an automobile and drive away. The officers followed, arrested and searched the men, finding the diamonds.

The district court held that there was probable cause or reasonable grounds for the arrest and search based on the testimony of the FBI agent, but held that petitioner's rights under the Fourteenth Amendment were denied him when the New York state trial court sustained the refusal to reveal the informer's identity as it deprived the defendant of his ability to call the informer to rebut the telephone conversation testified to by the FBI agent.

Although unnoted by the defendant, at the time of his appeal the *Fay* case was on appeal from the district court to the circuit court of appeals for the second circuit. The circuit court of appeals reversed the district court, holding in essence that where the existence of "probable cause" or "reasonable grounds" depends entirely upon the reliability of an informer the name of the informer must be divulged, but, on the other hand, where " 'the correctness of the informer's tip had to some extent been confirmed through corroboration [*United States v. Elgisser,* 334 F2d 103, 111]' ", the name of the informer could be withheld. *United States v. Fay,* 344 F2d 625, 634 (1965).

We are of the opinion there was ample evidence of "probable cause" or "reasonable grounds" for the officers in the case before us to believe that the defendant was committing a felony in their presence, apart from the informer's tip, but should it be necessary to ground this opinion on the basis that the officers did not have "probable cause" or "reasonable grounds" for the arrest and search without the informer's tip, then it is clear that the officers prior to the arrest and search corroborated the veracity of the informer through their own observance of the actions of the defendant.

Affirmed.