Argued and submitted October 27, 1989, reversed and remanded July 18, reconsideration denied September 5, petition for review denied October 2, 1990 (310 Or 422)

STATE OF OREGON,
*Appellant,*

*v.*

KENDALL IRA FAULKNER,
*Respondent.*

(88-2693-C-3; CA A51288)

794 P2d 821

Diane S. Lefkow, Assistant Attorney General, Salem, argued the cause for appellant. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

David E. Groom, Salem, argued the cause for respondent. With him on the brief was Sally L. Avera, Acting Public Defender, Salem.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

Newman, J., dissenting.

## RICHARDSON, P. J.

The state appeals an order granting defendant's motion to suppress evidence discovered when an officer looked in the cab of defendant's pickup with a flashlight. We reverse and remand.

The facts relevant to the motion to suppress are not disputed, and we will summarize the court's findings. Officer Churma arrived at defendant's house at 2:47 a.m.,[1] in response to a report of a domestic disturbance. When he arrived, defendant was standing near a passenger car in the driveway, attempting to calm his girlfriend. Churma took defendant to a spot next to defendant's pickup, which was also in the driveway, so that they could talk. While talking, Churma shined his flashlight into the cab of the pickup and saw a vial of white powder on the seat. He believed it to be cocaine and seized it. Churma testified that he was using the flashlight in the process of writing his notes and that he shined it in the pickup, because it was "a real nice looking Chevrolet pickup that was modified and customed."

Defendant moved to suppress the evidence, arguing that the use of the flashlight constituted an unlawful search. The court concluded:

"(1) The shining of the Officer's flashlight into the pickup constitutes a search.

"(2) That the search was not related to the matter that was under investigation, to wit: a domestic disturbance.

"(3) That the search was exploratory and without probable cause."

Because there was no warrant or applicable exception to the warrant requirement, the court ruled that the search violated both Article I, section 9, and the Fourth Amendment.

The state appeals, ORS 138.060(3), and contends that Churma's use of the flashlight was not a search and, because the vial was otherwise in plain view, there was no

---

[1] In the written findings, the court stated that Churma arrived at 11:47 p.m. However, the parties concede that the evidence was that he arrived at 2:47 a.m.

constitutional violation.[2] We first review the issue under the Oregon Constitution. *State v. Kennedy,* 295 Or 260, 262, 666 P2d 1316 (1983).

■      Article I, section 9, protects a person against an "unreasonable search, or seizure." A search occurs when governmental action invades a protected property or privacy interest, *State v. Tanner,* 304 Or 312, 320, 745 P2d 757 (1987); *State v. Owens,* 302 Or 196, 206, 729 P2d 524 (1986), *i.e.,* when particular police activity

> "if engaged in wholly at the discretion of the government, will significantly impair 'the people's' freedom from scrutiny * * *." *State v. Campbell,* 306 Or 157, 171, 759 P2d 1040 (1988).

■      Defendant argues that use of the flashlight was a search, because it is a "technological enhancement" and that the search was not supported by a warrant or an exception to the warrant requirement. As to the first assertion, he argues that, obviously, a flashlight is an enhancement and, because the officer could not see the vial without using the flashlight, it was a search. That oversimplifies the issue. Use of an enhancing mechanism does not itself make the activity a search, *State v. Carter/Grant,* 101 Or App 281, 790 P2d 1152 (1990), although the device used in detecting evidence *may* be important in determining whether police conduct has interfered with defendant's interest in being free from governmental scrutiny. *See State v. Campbell, supra; State v. Ainsworth,* 95 Or App 240, 770 P2d 58, *rev allowed* 308 Or 158 (1989).

Had the observation been made during the daytime, or in some other situation where reliance on the flashlight was unnecessary, there would be no question but that Churma's action would not have been a "search." *See State v. Jackson,*

---

[2] We have previously concluded that use of a flashlight is not *ipso facto,* a search. *State v. Berg,* 60 Or App 142, 147, 652 P2d 1272 (1982); *State v. Miller,* 45 Or App 407, 410, 608 P2d 595, *rev den* 289 Or 275 (1980). However, we apparently relied on a Fourth Amendment analysis and its standard of "reasonable expectation of privacy," which may since have been rejected for purposes of an Article I, section 9, analysis. *State v. Campbell,* 306 Or 157, 759 P2d 1040 (1988); *State v. Tanner,* 304 Or 312, 745 P2d 757 (1987).

296 Or 430, 677 P2d 21 (1984).[3] The state relies on that as a basis to conclude that there was not a search. Although the fact may be relevant, insofar as it describes the circumstances, whether or not "police conduct is a search does not turn on whether its object could have been discovered by conduct that is not a search." *State v. Campbell, supra,* 306 Or at 167.

In *State v. Evans,* 101 Or App 340, 790 P2d 1177 (1990), an officer, with the aid of a flashlight, observed a gun lying on the seat of the defendant's car. At the time, the officer was using the flashlight to keep track of the defendant's movements in the car. The defendant argued, as does defendant here, that use of the flashlight was a technically enhanced search. We held that use of the flashlight was not a search, because it was being used for the legitimate purpose of following the defendant's movements. *See also State v. Slowikowski,* 307 Or 19, 761 P2d 1315 (1988).

In this case, defendant concedes that Churma was properly on the premises for the purpose of conducting an investigation. The vial itself was sitting on the seat without any impediment to observation other than the shroud of darkness. It may be that defendant thought that the darkness would provide sufficient cover. While Churma was using the flashlight to see what he was writing, he trained the beam of light in the pickup to admire the interior. Under these circumstances, use of the flashlight to see what was otherwise in plain view did not significantly impair defendant's freedom from scrutiny and was, therefore, not a search in the context of Article I, section 9.

The result is the same under the Fourth Amendment. *Texas v. Brown,* 460 US 730, 739-40, 103 S Ct 1535, 75 L Ed 2d 502 (1983).

Reversed and remanded.

---

[3] In *Jackson,* the court concluded:

"An officer who has lawfully stopped a vehicle does not violate any occupant's rights in walking around the vehicle and looking through the windows of the vehicle to observe that which can be plainly seen." 296 Or at 438.

Although the officer used a flashlight in that case, the court left open the significance of that use, because the defendant did not complain of its use. *State v. Jackson, supra,* 296 Or at 438, n 4.

**NEWMAN, J.,** dissenting

The majority errs when it holds that Churma's act of shining the flashlight into defendant's truck was not a search within the meaning of Article I, section 9. It states in a conclusory fashion that "use of the flashlight to see what was otherwise in plain view did not significantly impair defendant's freedom from scrutiny and was, therefore, not a search[.]" 102 Or App at 421. I disagree.

The purpose for which Churma was lawfully on the premises was to conduct an investigation of a domestic dispute. He did not make a traffic stop. *See State v. Jackson,* 296 Or 430, 438 n 4, 677 P2d 21 (1984). The truck, situated in defendant's driveway, had nothing to do with Churma's investigation. Nothing occurred while Churma was there to make the truck relevant to that investigation. The record discloses *no* reason why he needed to shine his flashlight into the truck. Churma's testimony was that he acted purely out of personal curiosity, unrelated to any official purpose. Unlike the officer in *State v. Evans,* 101 Or App 340, 790 P2d 1177 (1990), Churma did not need to shine the flashlight into the truck to keep defendant under observation. Defendant was not in the truck, and he did not attempt to reach inside it while Churma was present.

Use of the flashlight to illuminate the interior of the truck was a search, because it was a purposive intrusion into an area—the vehicle—in which defendant had a privacy interest. *See State v. Slowikowski,* 307 Or 19, 27, 761 P2d 1315 (1988); *see also State v. Goin,* 101 Or App 503, 791 P2d 149 (1990); *State v. Ainsworth,* 95 Or App 240, 770 P2d 58, *rev allowed* 308 Or 158, 776 P2d 859 (1989). Churma's conduct was a significant impairment of defendant's freedom from scrutiny. The protection of privacy that Article I, section 9, affords will be seriously eroded if a police officer may shine a flashlight into a person's vehicle without a warrant, probable cause and exigent circumstances, consent or other authority, merely to satisfy his own curiosity (or his interest in "nice looking pickups"). Moreover, use of a technological enhancement —the flashlight—to observe what was otherwise shrouded in

darkness is significant, because the flashlight was the instrumentality of the intrusion. The trial court correctly suppressed the vial.[1]

    I dissent.

---

[1] The majority asserts that the flashlight allowed Churma to observe "what was otherwise in plain view." 102 Or App at 421. The vial was *not* in plain view, because Churma's discovery was not inadvertent; it resulted from his purposive intrusion into the truck with his flashlight. *See State v. Handran*, 97 Or App 546, 550, 777 P2d 981 (1989).